IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTONIO WATSON,** | : | CIVIL ACTION NO. 1:15-CV-1349 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **DETECTIVE TODD WITMER**, *et al.*, | : | |
| Defendants | : | |

### MEMORANDUM

Plaintiff Antonio Watson ("Watson") filed the above-captioned action alleging Fourth Amendment and equal protection claims under 42 U.S.C. § 1983, a racial discrimination claim under 42 U.S.C. § 1981, and state law claims for false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress ("IIED"). Before the court is a motion (Doc. 22) to dismiss filed by defendants Corporal Todd Witmer ("Corporal Witmer"), David Johnson ("Johnson"), Lower Paxton Township Police Department, and Lower Paxton Township.[1] The motion will be granted in part and denied in part.

**I.   Factual Background & Procedural History**

Watson is an African-American male residing in Harrisburg, Pennsylvania. (Doc. 17 ¶¶ 1, 85). Corporal Witmer is an employee of the Lower Paxton Township Police Department. (Id. ¶ 2). At all times relevant to the amended complaint, Johnson was the Director of Public Safety for Lower Paxton Township. (Id. ¶ 4).

---

[1] Watson also names as defendants parole officer George Baird, Pennsylvania Board of Probation and Parole chairman John Tuttle, and the Pennsylvania Board of Probation and Parole. (Doc. 17 ¶¶ 6-8). These non-moving defendants filed an answer (Doc. 21) to the amended complaint on August 26, 2015.

On January 8, 2013, a robbery transpired at a Sunoco gas station located at 4220 Union Deposit Road in Lower Paxton Township, Dauphin County, Pennsylvania. (Id. ¶ 9). Store surveillance cameras recorded the perpetrator, and still photographs of him were released to the public to facilitate his identification. (Id. ¶¶ 11-12; Doc. 17-2). After viewing these images, Watson's parole officer, George Baird ("Baird"), identified Watson as the offender. (Doc. 17 ¶¶ 6, 13-14). Thereafter, Corporal Witmer arrested Watson on January 10, 2013 and charged him with robbery. (Id. ¶ 15). Watson remained in Dauphin County Prison during the pendency of the charge. (Id. ¶ 26).

While confined, Watson maintained that he was innocent. He avers that he completed and passed a polygraph examination regarding the Sunoco robbery. (Id. ¶ 19). On January 23, 2013, Watson's counsel met with Corporal Witmer and urged that Watson had been misidentified as the perpetrator. (Id. ¶ 20). Counsel presented for Corporal Witmer's comparison the booking photograph of Watson and the still pictures from the robbery. (Id. ¶ 21). The amended complaint alleges, however, that Corporal Witmer "declared that he did not need to, and would not, examine the photographs" because Baird had positively identified Watson. (Doc. 17-3; see also Doc. 17 ¶ 22).

On or about February 5, 2013, the charges against Watson were dismissed. (Doc. 17 ¶ 24). Watson was not immediately discharged. (Id. ¶¶ 24-25). On February 6, 2013, Baird handcuffed Watson, transported him to a local shopping center, and released him. (Id. ¶ 25).

Watson filed his original complaint in the Dauphin County Court of Common Pleas. (See Doc. 6 at 25-47). Defendants timely removed the action to this court. (Doc. 1). On August 1, 2015, the present moving defendants filed a motion (Doc. 12) to dismiss the complaint. The court denied defendants' motion as moot upon Watson's filing of an amended complaint (Doc. 17) on August 17, 2015. (See Doc. 18).

In his amended complaint, Watson asserts Fourth Amendment and equal protection claims under 42 U.S.C. § 1983 against Corporal Witmer, Johnson, the Lower Paxton Township Police Department, and Lower Paxton Township. Watson also brings against Corporal Witmer a race discrimination claim under 42 U.S.C. § 1981 and state law claims for false arrest, false imprisonment, malicious prosecution, and IIED. On September 3, 2015, defendants filed the instant motion (Doc. 22) to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion is fully briefed and ripe for disposition.

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

3

Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' " Id. at 130 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id. at 131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 251, but leave is broadly encouraged "when justice so requires." FED. R. CIV. P. 15(a)(2).

**III.    Discussion**

Defendants contend that Watson's factual averments are insufficient to establish his entitlement to relief under Section 1983 and the Fourth and Fourteenth Amendments, Section 1981, and state law governing false arrest, false imprisonment, malicious prosecution, and IIED. The court will address these issues *seriatim*.

**A.    Section 1983 Claims**

Section 1983 of Title 42 of the United States Code provides a cause of action to redress violations of federal law committed by state officials. See 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights otherwise protected by federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under Section 1983, plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)). Defendants do not dispute Watson's contention that Corporal Witmer acted under color of state law. (See Doc. 17 ¶¶ 55, 68, 83, 133).

In the case *sub judice*, Watson alleges that Corporal Witmer violated his constitutional rights under the Fourth and Fourteenth Amendments. Watson further asserts that Johnson, the Lower Paxton Township Police Department, and Lower Paxton Township are subject to municipal liability for the aforementioned constitutional deprivations.

5

1.  *Fourth and Fourteenth Amendment Claims Against Corporal Witmer*

    a.  **Fourth Amendment False Arrest, False Imprisonment, and Malicious Prosecution**[2]

The sum and substance of defendants' challenge to the Section 1983 claims is their asseveration that Corporal Witmer had probable cause to arrest and detain Watson. (Doc. 23 at 8-11; Doc. 25 at 5). A false arrest claim requires plaintiff to show that he or she was arrested without probable cause. See Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) (citing Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988)); Dull v. W. Manchester Twp. Police Dep't, 604 F. Supp. 2d 739, 750 (M.D. Pa. 2009) (Conner, J.). A claim for false imprisonment may be grounded on a "detention pursuant to [an] arrest" made without probable cause. Groman, 47 F.3d at 636; see also Stewart v. Moll, 717 F. Supp. 2d 454, 463 (E.D. Pa. 2010). The elements of a malicious prosecution claim are as follows: (1) defendant commenced a criminal proceeding; (2) the proceeding terminated in plaintiff's favor; (3) defendant "initiated the proceeding without probable cause;" (4)

---

[2] The amended complaint also presents the alleged conduct engendering the false arrest, false imprisonment, and malicious prosecution claims as violations of the Fourteenth Amendment. (Doc. 17 ¶¶ 63, 75, 134). It is well-settled that reliance on the Due Process Clause of the Fourteenth Amendment is inappropriate when the conduct at issue is "governed by a specific constitutional amendment." Berg v. Cty. of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000); see also Williams v. City of Phila., No. 09-4826, 2010 WL 4181873, at *5 (E.D. Pa. Oct. 22, 2010). In the instant action, Watson's claims relating to his purportedly unlawful arrest and imprisonment plainly implicate the Fourth Amendment. See, e.g., Berg, 219 F.3d at 268-69 (citing Cty. of Sacramento v. Lewis, 523 U.S. 833, 842-43 (1998)); Meketa v. Kamoie, 955 F. Supp. 2d 345, 365 (M.D. Pa. 2013) (citing Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 674 (M.D. Pa. 2009) (Conner, J.)). The court notes that, to the extent that Watson intends to pursue the abovementioned claims as Fourteenth Amendment deprivations, he must distinguish the gravamen of those claims from quintessential Fourth Amendment violations.

defendant acted maliciously or with a purpose apart from bringing plaintiff to justice; and (5) plaintiff "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007); see also Henderson v. City of Phila., 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012).

Probable cause to arrest exists when facts and circumstances within a police officer's knowledge would convince a reasonable person that an individual has committed an offense. See Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002). Thus, the relevant inquiry is not whether the individual actually committed the crime for which he or she was arrested, but whether the officer had probable cause to believe so at the time of the arrest. See Groman, 47 F.3d at 634-35.

In the instant case, the *allegata* support a plausible inference that Corporal Witmer may have lacked probable cause. Defendants treat as dispositive the fact that parole officer Baird, who was familiar with Watson's appearance, identified Watson as the perpetrator. (Doc. 23 at 11). However, Watson claims that Corporal Witmer knew at the time of the arrest that probable cause was wanting in light of the patent physical differences between the perpetrator and Watson. (Docs. 17 ¶ 16; 17-1, 17-2). The court finds that a determination that probable cause must have existed would be premature at this procedural posture. Cf. Toribio v. Spece, No. 3:10-CV-2441, 2011 WL 6027000, at *3 (M.D. Pa. Dec. 5, 2011); Alassani v. Walter, No. 10-4491, 2011 WL 135018, at *5 (E.D. Pa. Jan. 14, 2011). This finding obviates the need to consider Watson's argument that exculpatory evidence dissipated any

7

probable cause for the initial arrest. (See Doc. 24 at 2-3, 8-9). Defendants' motion to dismiss the Section 1983 false arrest, false imprisonment, and malicious prosecution claims will be denied.

### b.     Fourteenth Amendment Equal Protection Claim

According to defendants, Watson's Section 1983 racial discrimination claim is too conclusory to survive a motion to dismiss. (Doc. 23 at 16). The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. It guarantees fairness and equality in the treatment of individuals by government officials. See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 239-42 (1976). Selective enforcement of law or regulations motivated by an individual's race may give rise to a violation of the Fourteenth Amendment. See Wren v. United States, 517 U.S. 806, 813 (1996); Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002).

Watson satisfactorily pleads an equal protection claim. He avers that, "as an African American, [he] is a member of a protected class." (Doc. 17 ¶ 85). He additionally alleges that Corporal Witmer "improperly arrested and detained [him] due to his race" and that "race was a motivating factor in the decision to maliciously prosecute him with false charges." (Id. ¶¶ 86, 87). Watson augments his theory of racial animus with his assertion that he could not reasonably have been confused with the Sunoco robbery perpetrator at the time of the arrest and throughout the duration of his detention. (Id. ¶¶ 16, 82). These statements together suffice to state a racial discrimination claim. Cf. Urrutia v. Quill, No. 1:05-CV-259, 2005 WL

2648339, at *3 (M.D. Pa. Oct. 17, 2005) (Conner, J.). Hence, the court will deny the motion to dismiss with respect to that claim.

### 2. *Municipal Liability Claim Against Johnson, the Lower Paxton Township Police Department, and Lower Paxton Township*

Defendants claim that the amended complaint fails to "identify a municipal policy" and to allege a pattern of conduct constituting deliberate indifference. (Doc. 23 at 15-16). In response, Watson submits that his allegations suffice under a liberal, notice-pleading standard. (Doc. 24 at 14-15).

Municipal liability arises when a governmental entity causes an employee to violate another's constitutional rights by an official custom or policy. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-94 (1978); Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). To establish liability, plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and show a causal link between the execution of the policy or custom and the injury suffered. Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984). A policy exists "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 481 (1986)). A custom may be formed when the " 'practices of state officials [are] so permanent and well settled' as to virtually constitute law." Id. (quoting Monell, 436 U.S. at 691).

A municipality may be held liable for constitutional violations that result from inadequate training of its employees if the failure to train constitutes a custom

of the municipality.  Connick v. Thompson, 563 U.S. 51, 61 (2011).  The failure must reflect "deliberate indifference to the [constitutional] rights of persons with whom the police come into contact."  Colburn v. Upper Darby Twp., 946 F.2d 1017, 1028 (3d Cir. 1991) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  A showing of deliberate indifference requires that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999).  Ordinarily, plaintiff must show a "pattern of similar [constitutional] violations" to prove deliberate indifference in the failure to train context.  Connick, 563 U.S. at 63.  However, the Supreme Court has indicated that a single incident may evince deliberate indifference when "the need to train officers . . . can be said to be so obvious" in itself and the lack thereof would predictably lead to recurrent rights violations.  City of Canton, 489 U.S. at 390 n.10; see also Thomas v. Cumberland Cty., 749 F.3d 217, 223-25 (3d Cir. 2014).

Watson adequately pleads a failure to train claim against defendant Lower Paxton Township.[3] Watson alleges that his injury resulted from a failure "to train police officers and [parole] officers regarding the proper identification of suspects" and failure to "take action when presented with . . . exculpatory evidence." (Doc. 17 ¶¶ 100, 104). The instant municipal liability claim appears largely predicated on the argument that the need for the identified training is "so obvious" and "likely to result in the violation of constitutional . . . rights" that it is tantamount to deliberate indifference on the part of the municipal defendants. (Id. ¶ 102). The "most tenuous" nature of failure-to-train theories of municipal liability, exacerbated herein by Watson's recourse to the unwonted "single incident" iteration of deliberate indifference, suggests the difficulty Watson faces in proving his claim. Connick, 563 U.S. at 61. Nonetheless, his averments suffice at the present stage. See Tarapchak v. Lackawanna Cty., No. 15-2078, 2016 WL 1246051, at *17-18 (M.D. Pa. Mar. 24, 2016); Fleckenstein v. Crawford, No. 1:14-CV-1085, 2015 WL 5829758, at *28 (M.D. Pa. Oct. 1, 2015); Kokinda v. Breiner, 557 F. Supp. 2d 581, 590 (M.D. Pa.

---

[3] A local police department is not a separate entity subject to suit under Section 1983. See Padilla v. Twp. of Cherry Hill, 110 F. App'x 272, 278 (3d Cir. 2004) (nonprecedential); Gremo v. Karlin 363 F. Supp. 2d 771, 780 (E.D. Pa. 2005); Irvin v. Borough of Darby, 937 F. Supp. 446, 450 (E.D. Pa. 1996). The court will therefore grant defendant Lower Paxton Township Police Department's motion to dismiss in its entirety. Moreover, the assertion of an official capacity claim against a government official is duplicative of a claim against the governmental entity itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985); Hill v. Borough of Kutztown, 455 F.3d 225, 233 n.9 (3d Cir. 2006); Johnston v. Dauphin Borough, No. 1:05-CV-1518, 2006 WL 1410766, at *4 (M.D. Pa. May 22, 2006) (Conner, J.). The amended complaint asserts only a municipal liability claim, and thus no individual capacity claims, against defendant Johnson. (See Doc. 17 at ¶¶ 98-101, 104). Accordingly, the court will also grant defendant Johnson's motion to dismiss in its entirety.

2008). The court will deny defendants' motion to dismiss with respect to the municipal liability claim against defendant Lower Paxton Township.

### B. Section 1981 Claim Against Corporal Witmer

Defendants contend that Watson's Section 1981 claim for racial discrimination is fatally threadbare. (Doc. 23 at 16). To prove a claim of purposeful racial discrimination under Section 1981 of Title 42 of the United States Code, plaintiff must establish: (1) that he or she is a member of a racial minority; (2) defendant's intent to racially discriminate; and (3) that the discrimination pertained to an activity enumerated in Section 1981. Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir. 2002); see also Ellis v. Budget Maint., Inc., 25 F. Supp. 3d 749, 753 (E.D. Pa. 2014). Section 1981 provides in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, [and] penalties.

42 U.S.C. § 1981. The United States Court of Appeals for the Third Circuit has found that Section 1981 may ground a claim for improperly race-motivated law enforcement by a state government official. Mahone v. Waddle, 564 F.2d 1018, 1027-28 (3d Cir. 1977); see also Garay v. Colasardo, No. 3:CV-14-1332, 2015 WL 4393464, at *11 (M.D. Pa. July 15, 2015).

The amended complaint satisfactorily pleads a claim for racial discrimination under Section 1981. Watson alleges that Corporal Witmer arrested and detained him without probable cause and on the basis that he is African-American. (See

Doc. 17 ¶¶ 85-87). Defendants propose no particular deficiency, and the court finds none. Indeed, similar allegations are consistently deemed sufficient. See, e.g., Mahone, 564 F.2d at 1028; Garay, 2015 WL 4393464, at *11; Tucker v. N.Y. Police Dep't, No. 08-2156, 2008 WL 4935883, at *7 (D. N.J. Nov. 18, 2008); Winfree v. Tokai Fin. Servs., Inc., No. 99-2970, 2000 WL 233240, at *3 (E.D. Pa. Mar. 1, 2000); Conway v. City of Phila., No. 96-8112, 1997 WL 129024, at *3 (E.D. Pa. Mar. 20, 1997). Defendants' motion to dismiss Watson's Section 1981 claim will be denied.

### C. State Law Claims Against Corporal Witmer

Watson asserts state law claims for false arrest, false imprisonment, malicious prosecution, and IIED against Corporal Witmer in his individual capacity. (Doc. 17; Doc. 24 at 13). Defendants posit that the doctrine of qualified statutory immunity bars these claims. (Doc. 23 at 12-14). Alternatively, defendants argue that each claim fails under the Rule 12(b)(6) pleading standard. (Id. at 8-11).

#### 1. *Qualified Immunity*

Under Pennsylvania's Political Subdivision Tort Claims Act (the "PSTCA"), an employee of a local agency is generally afforded the same broad protections against tort liability as the agency itself. See 42 PA. STAT. AND CONS. STAT. ANN. § 8545; Spiker v. Allegheny Cty. Bd. of Prob. and Parole, 920 F. Supp. 2d 580, 612 (W.D. Pa. 2013) (citing Lancie v. Giles, 572 A.2d 827, 830 (Pa. Commw. Ct. 1990)). However, an employee may be liable in his or her individual capacity when the challenged act amounts to "a crime, actual fraud, actual malice or willful misconduct." 42 PA. STAT. AND CONS. STAT. ANN. § 8550; see also Torres v. Allentown Police Dep't, No. 13-3066, 2014 WL 4081477, at 9 n.19 (E.D. Pa. Aug. 18,

13

2014) (collecting cases). Pennsylvania courts apply a distinct, subjective standard to police officers to determine whether the willful misconduct exception applies. Renk v. City of Pittsburgh, 641 A.2d 289, 293-94 (Pa. 1994); see also Basile v. Twp. of Smith, 752 F. Supp. 2d 643, 669 (W.D. Pa. 2010) (citing Brockington v. City of Phila., 354 F. Supp. 2d 563, 571 (E.D. Pa. 2005)). That is, a police officer must have understood that the tortious action is illegal and intended to commit it nonetheless. See In re City of Phila. Litig., 158 F.3d 723, 728 (3d Cir. 1998).

In the instant matter, Watson's averments demonstrate that the PSTCA may not shield Corporal Witmer with respect to the state law claims. False arrest, false imprisonment, malicious prosecution, and IIED constitute intentional torts. See Cruz ex rel. Alvarez v. City of Phila., No. 07-493, 2008 WL 4347529, at *10 (E.D. Pa. Sept. 23, 2008) (citing Gines v. Bailey, No. 92-4170, 1992 WL 394512, at *5 (E.D. Pa. Dec. 29, 1992)). These claims *ex proprio vigore* establish that Corporal Witmer's conduct was knowing and intentional. Moreover, the delineation of each state law claim in the amended complaint includes the assertion that Corporal Witmer arrested Watson "knowing [he] lacked probable cause to do so." (Doc. 17 ¶¶ 34, 51, 129, 154). Watson supplements his probable cause contestation with allegations including the purported discrepancy in appearance between the Sunoco robbery perpetrator and Watson. (Id. ¶ 16; see also *supra* Part III.A.1.a.). At this procedural juncture, the allegations, if proven, are sufficient to establish that Corporal Witmer engaged in willful misconduct, thereby abrogating statutory immunity. See, e.g., Basile, 752 F. Supp. 2d at 669-70; Kokinda, 557 F. Supp. 2d at 594-95; Walker v. N.

Wales Borough, 395 F. Supp. 2d 219, 231 (E.D. Pa. 2005).  The court thus finds that defendants are not entitled to qualified immunity at this stage of the litigation.

### 2. *State Law Claims for False Arrest, False Imprisonment, Malicious Prosecution, and IIED*

Watson premises his state law claims on his arrest and nearly month-long prison detention.  (Doc. 17 ¶¶ 26, 29, 40, 122, 154).  Under Pennsylvania law, false arrest and false imprisonment are "essentially the same actions."  Pellegrino v. U.S. Transp. Sec. Admin., 855 F. Supp. 2d 343, 357 (E.D. Pa. 2012) (internal quotation omitted); Gagliardi v. Lynn, 285 A.2d 109, 111-12 (Pa. 1971).  Plaintiff must prove that: (1) defendant intended to confine the plaintiff; (2) defendant performed an action that directly or indirectly produced such confinement; and (3) plaintiff was either conscious of or harmed by the conduct.  Gagliardi, 285 A.2d at 111 n.2 (quoting Restatement (Second) of Torts § 35 (Am. Law Inst. 1965)); see also Kintzel v. Kleeman, 965 F. Supp. 2d 601, 608 (M.D. Pa. 2013).  In the context of a seizure by a state officer, plaintiff must show that the detainment was unlawful.  See Renk, 641 A.2d at 293.

A claim of malicious prosecution requires a plaintiff to demonstrate that: (1) defendant initiated a criminal proceeding; (2) the proceeding terminated in the plaintiff's favor; (3) defendant initiated the proceeding without probable cause; and (4) defendant acted maliciously or with a purpose apart from bringing plaintiff to justice.  See Donahue v. Gavin, 280 F.3d 371, 379 (3d Cir. 2002) (citing Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996)).

Finally, to sustain an IIED claim, plaintiff must establish that (1) defendant's conduct was intentional or reckless; (2) defendant's conduct was extreme and outrageous; (3) defendant's conduct caused emotional distress; and (4) the resultant emotional distress was severe. Bruffett v. Warner Commc'ns, Inc., 692 F.2d 910, 914 (3d Cir. 1982); see also Prukala v. Elle, 11 F. Supp. 3d 443, 449-50 (M.D. Pa. 2014). A court must be satisfied that defendant's alleged conduct is so extreme and outrageous that it "go[es] beyond all possible bounds of decency, and . . . [is] regarded as atrocious, and utterly intolerable in a civilized society." Wilkes v. State Farm Ins. Cos., No. 1:05-CV-586, 2005 WL 1667396, at *4 (M.D. Pa. July 15, 2005) (quoting Baselice v. Franciscan Friars Assumption BVM Province, Inc., 879 A.2d 270, 281 (Pa. Super. Ct. 2005)).

Defendants argue that Corporal Witmer had probable cause to arrest Watson for the Sunoco robbery, thereby precluding liability for false arrest or false imprisonment, malicious prosecution, and IIED. (Doc. 23 at 8-11; Doc. 25 at 5). "The Pennsylvania and federal standards regarding the existence of probable cause are the same." DeBellis v. Kulp, 166 F. Supp. 2d 255, 280 (E.D. Pa. 2001) (citing Renk, 641 A.2d at 293). As discussed *supra*, the court rejects defendants' contention at this juncture. See Part III.A.1.a. The motion to dismiss will therefore be denied as to the abovementioned claims.

**IV.     Conclusion**

Defendants' motion (Doc. 22) to dismiss will be granted in part and denied in part.  An appropriate order shall issue.

        /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     April 25, 2016